# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. VAN PALEOLOGOS, | ) ) ) |
| Petitioner, | ) ) |
| v. | ) Hon. John W. Darrah ) No: 06 C 6773 ) |
| NEDRA CHANDLER, Warden, Dixon Correctional Center, | ) ) ) ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Petitioner, Van Paleologos, filed a Petition for Writ of *Habeas Corpus* under 28 U.S.C. § 2254. Petitioner, who is currently incarcerated at the Dixon Correctional Center in Dixon, Illinois, in the custody of the Warden, Respondent Nedra Chandler, asserts that he is being held unlawfully because: (1) he was denied effective assistance of trial counsel; (2) his due process rights were violated by the trial-court judge, who imposed a significantly greater sentence after a bench trial than Petitioner was offered during plea negotiations and thereby penalized him for exercising his constitutional right to trial; (3) he was denied effective assistance of appellate counsel; (4) his rights under the U.S. Constitution were denied when the post-conviction trial court resolved the merits of Petitioner's Petition for Post-Conviction Relief; and (5) the post-conviction trial court violated the Fifth, Sixth, and Fourteenth Amendments by making findings of fact relating to the Petitioner's ineffective-assistance-of-trial-counsel claim that were unreasonable and manifestly erroneous.

1

## BACKGROUND

In case number 96 CR 12932, Petitioner was charged in a seventeen-count indictment with aggravated criminal sexual assault (Count 1), home invasion (Count 2), armed robbery (Count 4), and armed violence (Count 5). Counts 3 and 8 through 17 merged with Count 1. The charges arose out of an incident in which Petitioner gained entry into the apartment of C.D., a 26-year-old female, by claiming that he was C.D.'s neighbor and was locked out of his apartment. Petitioner was charged with putting a knife to C.D.'s throat, using the knife to cut open her t-shirt, fondling her, and forcing his penis into her mouth.[1] Petitioner's family hired Attorney John Malevitis to represent the Petitioner.

On the day that Petitioner's case was scheduled for trial, March 3, 1998, the trial-court judge, Judge Palmer, denied a continuance over the objection of Petitioner's trial counsel, Malevitis, who stated that he had not prepared "in any way for the trial defense of the charges against [Petitioner]." (Common Law Record on Direct Appeal C. 55). Petitioner also asserts Judge Palmer denied his request to replace his attorney. The case was set over to the next day for trial. Malevitis again requested a continuance, and Judge Palmer again rejected this request. At this point, Malevitis informed the trial-court judge that Petitioner had requested a plea negotiation conference pursuant to Illinois Supreme Court Rule 402. During the plea agreement conference on March 4, 1998, the trial judge offered to impose a sentence of incarceration of twenty-two years in the event the Petitioner entered a guilty plea to the indictment. Petitioner asserts that he was not present at the Rule 402 conference and that Petitioner's trial counsel

---

[1] Petitioner was charged with home invasion and attempted sexual assault on two other victims, in case number 96 CR 12931, which is not the subject of this *habeas* petition.

2

conveyed the trial judge's offer to the Petitioner; and trial counsel also told Petitioner that because all of the charges occurred as part of a single course of conduct, the maximum sentence that the trial court could impose was thirty years. However, under Illinois law, the trial court was required to impose a sentence on Count 1 consecutive to the sentences on the other counts; and, thus, Petitioner's maximum exposure was sixty years. Respondent responds that Petitioner was present at the Rule 402 conference and that he was informed of the mandatory consecutive sentence requirements.

All parties agree that Petitioner rejected the proposed plea agreement, waived his right to trial by jury, and proceeded to a bench trial before Judge Palmer. Following the presentation of all of the evidence, the trial-court judge found Petitioner guilty on all charges.[2]

At sentencing, the trial-court judge, stating that he was obligated to impose consecutive terms of imprisonment for the offense of aggravated criminal sexual assault, sentenced Petitioner to 25 years' imprisonment on that charge and a consecutive 25-year term for home invasion, armed robbery, and armed violence. The trial court stated that Petitioner was "a menace to society" and explained that out of all the goals to be achieved by sentencing, protection of the public was paramount in this case. The sentencing transcript reflects the following exchange between Malevitis and the trial-court judge:

> MR. MALEVITIS: The State is asking based on the same occurrence for all these class X's of which they charge, the same occurrence [sic] they are asking for consecutive sentences which we maintain is improper.

---

[2] The state appellate court summarized the evidence presented at Petitioner's trial; Petitioner has not challenged this summary. The Court adopts the summary therein. (Exhibit A at 4-14).

> THE COURT: The law requires that I give him a consecutive sentence because of the sex offenses. That's the statute. Are you asking me not to follow the statute?

(Pet. Ex. Y, Tr. G. 47-48 & C140). The court went on to explain that when an offender is convicted of aggravated criminal sexual assault, the sentence for that offense must be consecutive to all other sentences in the incident. To this, Malevitis responded as follows:

> MR. MALEVITIS: Judge, my client was charged – the aggravated criminal sexual assault is the one, the elected case obviously that we are here for. The other sexually related cases of which he is charged and not been to trial do not have any aggravating features to them. He's not charged with a Class X on the sex offense on those.

(Pet. Ex. Y, Tr. G-48). The trial-court judge then imposed consecutive sentences, aggregating to fifty years.

On May 1, 1998, Malevitis filed a Motion to Reconsider Sentence, which, in relevant part, alleged:

> 3. That during a conference pursuant to Illinois Supreme Court Rule 402, the Defendant was offered a sentence of 22 years in exchange for a plea of guilty to Aggravated Criminal Sexual Assault, Home Invasion, Armed Robbery, and Aggravated Unlawful Restraint, said sentence to be served concurrently.
>
> 4. That this court's consecutive sentence of fifty (50) years in the penitentiary is excessive in view of the Defendant's background and the nature of his participation of the offense. *People v. Williams*, 196 Ill.App.3d 851 (1990); Illinois Constitution Article 1, Section 11 (1970).
>
> * * *
>
> 6. Sentence herein improperly penalized the Defendant for exercising his right to trial. *People v. Dennis*, 14 Ill.App.3d 493 (1973)[sic].

(Pet. Ex. AA). The reconsideration motion was denied.

4

Petitioner appealed to the Appellate Court of Illinois, First Judicial District. A docketing statement Malevitis filed stated that he believed one of the issues he intended to raise on appeal was that the "Offenses were all allegedly committed during one transaction, and it was error to sentence defendant to a consecutive sentence." (Pet. Ex. BB). Ultimately, Petitioner raised six claims with respect to case number 96 CR 12932[3]: (1) that the trial court erred by admitting as *modus operandi* evidence the allegations in two pending criminal sexual assault cases,[4] thereby preventing Petitioner from defending himself without compromising his right against self-incrimination; (2) that Petitioner received ineffective assistance of trial counsel when the trial-court judge required Petitioner to proceed to trial even though his trial counsel stated he was not prepared for trial; (3) that he was denied due process when the trial court, in violation of Illinois Supreme Court Rule 415(g)(i), allowed the State to tender supplemental discovery on the date of trial; (4) that Petitioner was not found guilty beyond a reasonable doubt; (5) that the trial court abused its discretion in sentencing Petitioner for both criminal cases; and (6) that trial counsel should have advised him of the availability of an insanity defense. On June 11, 2001, Petitioner's conviction was affirmed by the appellate court.

Petitioner filed, *pro se,* a Petition for Leave to Appeal ("PLA") to the Illinois Supreme Court. Petitioner did not raise specific grounds in the PLA but, rather, attached the opening and

---

[3] Petitioner subsequently pleaded guilty to attempted aggravated criminal sexual assault and home invasion in the related case number 96 CR 12931. The trial judge sentenced Petitioner to twenty-five years to run concurrent with the sentence in 96 CR 12932. The state appellate court addressed Petitioner's claims in a consolidated appeal. In addition to the six claims listed above, the Petitioner raised three claims that were solely related to 96 CR 12931.

[4] Case number 96 CR 12931.

reply briefs his appellate counsel filed before the Appellate Court. Petitioner's PLA was denied by the Illinois Supreme Court on December 5, 2001.

On May 29, 2002, Petitioner, now with the help of counsel, filed a Petition for Post-Conviction Relief. In this petition, Petitioner raised claims for: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; (2) due process violation in that the trial-court judge imposed a significantly greater sentence after a bench trial than it offered during plea negotiations and thereby penalized him for exercising his constitutional right to trial. Petitioner also filed a motion asking the trial-court judge, Judge Palmer, to recuse himself (Judge Palmer was also assigned as the post-conviction trial-court judge) because Petitioner anticipated that Judge Palmer could be a witness at an evidentiary hearing. Judge Palmer denied the motion to recuse. Then Petitioner filed a motion to substitute the judge (from Judge Palmer) for cause before Judge McSweeney-Moore. This was also denied.

On July 30, 2002, the post-conviction trial court dismissed the Petition for Post-Conviction Relief on timeliness grounds. The Petitioner then appealed this ruling to the Illinois Appellate Court, First District, raising three grounds: (1) that the trial court penalized Petitioner for exercising his right to stand trial by sentencing him to 50 years' imprisonment when the trial court had previously agreed to impose a 22-year sentence if he pled guilty; (2) that the post-conviction trial court's determination that trial counsel was credible and did not render ineffective assistance during plea negotiations was against the manifest weight of the evidence; and (3) that the post-conviction trial judge should not have presided over Petitioner's petition because he was a material witness to the claims raised in that petition.

On December 23, 2003, the state appellate court reversed the trial court's judgment

dismissing Petitioner's post-conviction petition and remanded the petition to the trial court for further proceedings. *People v. Paleologos*, 803 N.E.2d 108, 112-14 (Ill.App. 1st Dist. 2003).

On January 27, 2004, the State filed a PLA in the Illinois Supreme Court that raised the following claim: the state appellate court's interpretation of the post-conviction statute's "culpable negligence" exception to the limitations period was erroneous. (Ex. N). The Illinois Supreme Court denied the PLA on March 24, 2004.

On remand for hearing on Petitioner's post-conviction petition, the post-conviction trial court held an evidentiary hearing on December 1, 2004, on the claim that Petitioner's trial counsel was ineffective during plea negotiations because he was unfamiliar with the mandatory sentencing laws governing Petitioner's sentencing exposure. The court concluded that Malevitis knew that consecutive sentencing was mandatory in Petitioner's case and properly advised Petitioner to that effect during plea negotiations and specifically held:

> I had spoke, previously spoken to Mr. Paleologos' credibility. In fact I was quoted by the Appellate Court when I talked about Mr. Paleologos' testimony before me at the trial. I think what I said was his testimony was completely and absolutely unbelievable. I found him to be a liar. And he was a liar. Mr. Paleologos is an admitted drug abuser, he's a convicted felon even before these cases, with regard to narcotics offenses and a rape. His demeanor in Court today showed me he's not believable. He even had to be admonished by the Court to answer the questions that he refused to answer. I don't believe anything that Mr. Paleologos says from the witness stand.
>
> On the other side of the equation is Mr. Malevitis, an attorney licensed to practice law in the state got up and told me that he fully understood -- I should point out Mr. Paleologos was impeached today during his testimony.
>
> Mr. Malevitis got on the stand and said he fully explained the law of consecutive sentencing to his client and that there was a 402 conference at which Mr. Paleologos was present. At the 402 conferences, the potential penalties are discussed. I am fully aware of potential penalties with regard to consecutive sentencing and you only need to look to the record to see that, because the record shows me speaking at sentencing as to the law of consecutive sentencing and I

think it's safe for the State to assume after the pre-trial conference, Mr. Paleologos was asked, it was discussed that he was eligible for consecutive sentencing.

(Pet. Ex. 3 at 109-10). The court explained Malevitis's arguments made at the sentencing hearing and in the Motion to Reconsider Sentence, which attacked the imposition of consecutive terms of imprisonment, as aggressive advocacy:

> You know there was a case that was in front of the Illinois Supreme Court in the year 2000. It had to do with a Lake County Judge, People ex. rel Waller versus McCotton . . . The defense counsel in a multi-county rape case, I think it had to do with 3 different rape victims similar to this. In that case the defense counsel persuaded the Judge in Lake County to issue concurrent sentences and again it had to go all the way to the Supreme Court for that decision to be reversed. Now the fact that that attorney put forth that claim and convinced that trial Judge to do that doesn't mean that attorney is an ineffective attorney. That simply means that attorney is an advocate.

(Pet. Ex. 3, Tr. B-75).

On June 7, 2005, Petitioner appealed the judgment denying his post-conviction petition to the Illinois Appellate Court, First District. Petitioner raised the following claims: (1) the post-conviction trial judge, Judge Palmer, erred by denying Petitioner's motion for recusal because he would be a material witness at a hearing on Petitioner's post-conviction claims; (2) the trial-court judge who heard Petitioner's motion for substitution of judge for cause erred when she denied that motion because the judge presiding over Petitioner's post-conviction petition would have been a material witness at a hearing on his post-conviction claims; (3) the post-conviction trial court's finding that Petitioner's trial counsel was credible and had not rendered ineffective assistance during plea negotiations was against the manifest weight of the evidence; and (4) the post-conviction trial court erred by dismissing Petitioner's claim that the trial court imposed a

greater sentence as punishment for exercising his right to stand trial on grounds that Petitioner failed to make a substantial showing of a denial of a constitutional right.

On December 2, 2005, the state appellate court affirmed the judgment denying the Petitioner's post-conviction petition. (Pet. Ex. S).

On December 29, 2005, Petitioner filed a PLA in the Illinois Supreme Court, raising the following three claims: (1) the trial court penalized Petitioner for exercising his right to stand trial by sentencing him to fifty years' imprisonment when the trial court had previously agreed to impose a twenty-two-year sentence if he pleaded guilty; (2) the post-conviction trial court's determination that trial counsel was credible and did not render ineffective assistance of counsel during plea negotiations was against the manifest weight of the evidence; and (3) the post-conviction trial judge should not have presided over Petitioner's petition because he was a material witness to the claims raised in that petition.

Petitioner's PLA was denied on March 29, 2006.

Also previously, on November 26, 2002, Petitioner also filed a petition for *habeas corpus* in the United States District Court for the Northern District of Illinois, *Paleologos v. Holmes*, case number 02-C-8595, before this Court. On December 7, 2004, this matter was dismissed with leave to re-file pending the resolution of state-court proceedings.

On December 7, 2006, Petitioner filed the instant petition for writ of *habeas corpus*. Here, Petitioner raises five claims.

## LEGAL STANDARD

Under 28 U.S.C. § 2254(d), a writ of *habeas corpus* of a person in custody pursuant to a state-court judgment will only be granted if the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).[5] In *habeas* proceedings, the burden of proof falls on a petitioner to show that he is entitled to relief under any of these theories. *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (*per curium*) (*Woodford*). Further, this Court must apply the presumption that the state courts know and follow the rules of federal constitutional law. *Woodford*, 537 U.S. at 24. State court findings of fact, whether developed in state trial or appellate courts, are presumed to be correct. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981). The presumption of correctness attaches to factual determinations reasonably based on the record. *See Kurzawa v. Jordan*, 146 F.3d 435, 440 (7th Cir. 1998). A petitioner contesting findings of fact bears the burden of rebutting this presumption of correctness with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002).

---

[5] Petitioner asserts that Section 2254(d) does not apply because there was not a fair adjudicative process in state court. In essence, Petitioner claims that because the state-court proceedings were purportedly tainted, the law that Congress passed in order to address state-court proceedings – the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") – does not apply. Petitioner's argument misses the mark. The term "adjudicated on the merits" is "best understood by stating what it is not: it is not the resolution of a claim on procedural grounds." *Muth v. Frank*, 412 F.3d 808, 815 (7th Cir. 2005). Here, the appellate court's adjudication of certain claims of Petitioner triggered the applicability of Section 2254. The merits of Petitioner's allegations with respect to the state-court proceedings are addressed below

With rare exception, a federal court may not grant *habeas* relief unless the state courts have had a full and fair opportunity to review the issue. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate risoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."); *Bell v. Pierson*, 267 F.3d 544, 555 (7th Cir. 2001). Before reaching the merits, district courts should deny a petition whenever the petitioner "either failed to exhaust all available state remedies or raise all claims before the state courts." *Dressler v. McCaughtry*, 238 F.3d 908, 912 (7th Cir., 2001). Procedural default may occur in several ways, including: (1) where the petitioner failed to present his claim in federal constitutional terms to the state courts, *Baldwin v. Reese*, 541 U.S. 27, 32-33, 124 S. Ct. 1347 (2004); (2) where the petitioner may have pursued all the appeals required by state law but did not assert claims raised in the federal *habeas corpus* petition in the state-court system, *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S. Ct. 2497 (1977); or (3) when "a claim that could have been but was not brought before a state court can no longer be asserted in that forum," *Resnover v. Pearson*, 965 F.2d 1453, 1458 (7th Cir. 1992). However, a court may review a procedurally defaulted claim where a petitioner establishes either: (1) "cause for his state-court default of any federal claim, and prejudice therefrom;" or (2) "a sufficient probability that [the Court's] failure to review his federal claim will result in a fundamental miscarriage of justice." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

---

under the standards, where applicable, set forth in Section 2254.

## ANALYSIS

Although Petitioner raises five claims in this Petition for *habeas corpus* relief, Petitioner fundamentally seeks relief on two grounds: First, Petitioner maintains that he was denied his right to effective assistance of counsel as guaranteed to him by the Sixth and Fourteenth Amendments to the U.S. Constitution during plea negotiations. Second, the Petitioner asserts that the trial court violated Petitioner's rights by doubling his sentence after trial. The other claims raised in Petitioner's Petition challenge the constitutional validity of the state-court proceedings where these issues were raised, or should have been raised, addressed, and resolved.

### *Ineffective Assistance of Trial Counsel*

Petitioner asserts, in Claim 1, that during plea negotiations, his trial counsel – Mr. Malevitis – failed to advise him that upon a finding of guilty, the trial court would, by operation of law, impose a sentence for aggravated criminal sexual assault that was consecutive to his sentences imposed on any other counts; and that this failure rendered counsel's performance ineffective. Specifically, Petitioner asserts that trial counsel erroneously advised Petitioner that because all of the charges in the indictment stemmed from a single course of conduct, the maximum sentence the Petitioner could serve was thirty years' imprisonment, when, under 730 ILCS 5/5-8-4(a)(i), Petitioner would have been subject to mandatory consecutive sentences of six to thirty years' imprisonment if convicted of aggravated criminal sexual assault and another offense. Petitioner asserts that counsel's advice led him to reject the trial court's offer to impose a twenty-two-year sentence and proceed to a bench trial.

Claim 1 has been properly exhausted and has been addressed on the merits by the state appellate court. The state appellate court held as follows:

12

In the instant case, the [post-conviction] trial court heard testimony from defendant and from his trial attorney. The essence of defendant's testimony was that he did not attend the Rule 402 conference, that trial counsel told him the maximum possible sentence was 30 years, and that he would have accepted the pre-trial offer of 22 years' imprisonment had he known he faced a possible sentence of 60 years. Trial counsel testified that he never told defendant the maximum sentence would be 30 years, that defendant was present at the Rule 402 conference, and that during the conference, the attorneys discussed the consequences if defendant were to be convicted after trial, including the existence of multiple Class X offenses for which sentences of up to the 30-year maximum could be imposed, some of which would be served consecutively.

We find it significant that at the hearing on his motion to withdraw his guilty plea in the companion case [case number 96 CR 12931], defendant testified that he was present at the Rule 402 conference. We also note that at the sentencing hearing in the instant case, the State made a request that defendant be sentenced to consecutive terms of imprisonment and Judge Palmer observed that the imposition of consecutive sentences was mandatory. Yet, when Judge Palmer asked defendant whether he wished to say anything in allocution before sentence was imposed, defendant responded negatively. In addition, when defendant pleaded guilty in the second case almost three months later, Judge Palmer again asked defendant whether he wished to say anything before he was sentenced and defendant again said no.

In contrast, trial counsel's testimony that defendant was present at the Rule 402 conference was unambiguous. Trial counsel stated that defendant chose to go to trial based on an adamant insistence of innocence, not based on a belief that there was only an eight-year difference between the offered sentence and the maximum possible sentence. With regard to the fact that he requested concurrent sentencing at the sentencing hearing, trial counsel explained that he was actually asking for leniency in sentencing. Similarly, trial counsel explained that when he repeated the reference to the impropriety of consecutive sentences in the motion to reconsider sentence, it was a "mistake and only in the form of some sort of argument that I didn't believe we really had any argument to make and I was trying to make some sort of argument, intelligent argument on his behalf because of the law as it stood as I know."

After hearing both witnesses' testimony, Judge Palmer [acting as the post-conviction trial-court judge] noted that he had earlier found defendant "completely and absolutely unbelievable" and observed that defendant was an admitted drug abuser and convicted felon. Judge Palmer found that defendant's demeanor and manner of testifying at the third-stage hearing demonstrated his continuing lack of believability and concluded, "The defendant has no credibility. None at all." With regard to trial counsel's credibility, Judge Palmer did not find

> the attorney's repeated arguments against consecutive sentences to constitute
> evidence that he did not understand the law of consecutive sentencing. Instead,
> Judge Palmer found that trial counsel was acting as an advocate and preserving an
> issue for appeal, as when attorneys challenge the Illinois death penalty or federal
> sentencing guidelines as unconstitutional. Judge Palmer believed trial counsel
> over defendant and denied defendant's petition for post-conviction relief.
>
> We cannot say that Judge Palmer's credibility determinations were evidently,
> plainly, or indisputably erroneous. Support for the credibility determinations
> exists in the record. Accordingly, we find that the trial court's findings that trial
> counsel was credible and that ineffective assistance had not been proven were not
> against the manifest weight of the evidence. Defendant's argument fails.

Ex. A at 8-10.

"An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in state-court proceedings unless the adjudication of the claim resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Thus, in order to overcome the state appellate court's finding that he was not denied effective assistance of counsel, Petitioner must establish, "by clear and convincing evidence, that the state court's factual determinations were unreasonable." *Harding v. Walls*, 300 F.3d 824, 828 (7th Cir. 2002); *see also* 28 U.S.C. § 2254(d)(2).

Here, Petitioner has not met his burden. Petitioner asserts Malevitis's explanation of his misstatements concerning concurrent and consecutive sentencing was impeached by three documents that Petitioner introduced at the hearing (an excerpt from Malevitis's argument during the sentencing hearing following Petitioner's conviction, Malevitis's motion for reconsideration of Petitioner's sentence, and the docketing statement that Malevitis filed in the state appellate

14

court to initiate Petitioner's appeal).[6] However, this information is insufficient to rebut – by the standard of clear and convincing evidence – the state appellate court's ruling. The state appellate court's holding was not baseless but rested on seven grounds: (1) the finding that Petitioner was present at the Rule 402 conference, during which the possibility of consecutive sentencing was discussed; (2) the State's request for consecutive sentencing after Petitioner was convicted; (3) Petitioner's silence when Judge Palmer asked, in both case number 96 CR 12931 and number 96 CR 12932, if he had anything to say in allocution; (4) trial counsel's "unambiguous" testimony that he never told Petitioner that he could only be sentenced to a 30-year term; (5) trial counsel's rational explanation for the misstatements he made regarding consecutive sentencing; (6) Petitioner's credibility; and (7) trial counsel's credibility as determined by the finder of fact. Thus, as to Claim 1, Petitioner's *habeas* petition is denied.

In Claims 4 and 5, the Petitioner challenges the constitutional validity of the state-court proceedings addressing his ineffective-assistance-of-trial-counsel claim. In Claim 4, Petitioner asserts that Judge Palmer, acting as the post-conviction trial-court judge, violated Petitioner's Fifth, Sixth, and Fourteenth Amendment rights when he held an evidentiary hearing and resolved the merits of Petitioner's Post-Conviction Petition because Judge Palmer, as the trial-court judge, was a material witness to the plea negotiations that were the subject of the Post-Conviction Petition claims. In Claim 5, Petitioner maintains that the post-conviction trial court violated the Fifth, Sixth, and Fourteenth Amendments by making findings of fact relating to the Petitioner's ineffective-assistance-of-trial-counsel claim that were unreasonable and manifestly erroneous at

---

[6] Petitioner further asserts that there was no fair adjudicative process on the merits in the Illinois courts, because Judge Palmer refused to recuse himself from acting as the post-

the post-conviction evidentiary hearing on December 1, 2004. Both of these claims have been procedurally defaulted.

Claim 4 is defaulted because it does not sound in violations of federal law. Although the Petitioner asserts that the post-conviction trial judge's failure to recuse violates the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution, Petitioner does not specify how those Amendments were violated nor cites to any federal case law in support of his position. Further, Petitioner states, in his transverse to this *habeas* petition, that the claim "was pled in state court based entirely on state law grounds." (Transverse at 16). Thus, this claim is not properly before this Court because – as Petitioner all but concedes – it has not been fairly presented to any state court as a federal constitutional claim. *Wilson v. Briley*, 243 F.3d 325, 328 (7th Cir. 2001) ("Because Wilson did not alert the Illinois courts to the constitutional nature of his claim, we will not entertain the merits of the claim."). Claim 5 has also been procedurally defaulted because it has never been raised in state court. Petitioner does not challenge this procedural default.

*Punitive Sentencing*

Petitioner asserts that the trial-court judge violated Petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution by penalizing him for exercising his constitutional right to trial (Claim 2). Petitioner asserts that imposing a significantly greater sentence after a bench trial than it offered during plea negotiations (fifty years versus twenty-two years) violated Petitioner's constitutional rights. Respondent asserts that Petitioner has not properly exhausted this claim, and it is procedurally defaulted. Petitioner responds that the

---

conviction trial-court judge, and petitions this Court to review the factual findings *de novo*. This is improper, for the reasons stated in footnote 5.

16

punitive sentencing claim was not defaulted because the state appellate court, while holding that it was waived or barred by the doctrine of *res judicata*, also addressed the merits. Thus, according to Petitioner, *Harris v. Reed*, 489 U.S. 255 (1989), applies; and the state appellate court's decision must be construed as addressing the merits of his vindictive sentencing claim.

In affirming the trial court's judgment, the state appellate court made the following ruling with respect to Petitioner's punitive-sentencing claim:

> As pointed out by the State, this argument could have been raised on direct appeal but was not. *Therefore, it is waived.*

(Exhibit S at 11) (emphasis added). The state appellate court – citing its earlier opinion in *People v. Paleologos*, 803 N.E.2d 108, 112-14 (Ill.App. 2003), in which it reversed the post-conviction trial court's judgment dismissing the petition on timeliness grounds – also concluded that Petitioner's claim regarding punitive sentencing was barred by *res judicata* because it had been rejected in his prior appeal regarding the timeliness of his post-conviction petition. *See Paleologos*, 803 N.E.2d at 118 (Ex. M) ("Accordingly, the argument is also barred by *res judicata*."). The state appellate court then went on to state: "Waiver and *res judicata* aside, [we opt] to address defendant's arguments"; the court then found that the Petitioner's punitive-sentencing claim was without merit. A reading of the state appellate court's decision, in its entirety, supports a finding that it was making an alternative ruling. That alternative holding does not obviate Petitioner's procedural default. *Brooks v. Walls*, 279 F.3d 518, 522 (7th Cir. 2002), *aff'd on reh'g*, 301 F.3d 839 (7th Cir. 2002). Thus, Petitioner's punitive-sentencing claim – Claim 2 – has been procedurally defaulted.

17

Direct appellate counsel's failure to raise a defaulted claim can, in some cases, amount to cause excusing the procedural default. In connection with Claim 3[7], which alleges ineffective assistance of direct appellate counsel, Petitioner asserts that any default would be excused by the direct appellate counsel's ineffective assistance. Even assuming *arguendo* that the ineffective-assistance claim were properly before the Court – which it is not [8]– Petitioner must show

---

[7] Petitioner asserts, in Claim 3, that appellate counsel on direct appeal was ineffective for failing to make three arguments: (1) the trial court punitively imposed a 50-year sentence after Petitioner rejected the court's plea offer; (2) during the hearing on Petitioner's motion to withdraw his guilty plea in case number 96 CR 12931, the trial court admitted it intended to punish Petitioner with a lengthy prison sentence if he went to trial; and (3) trial counsel rendered ineffective assistance during guilty plea negotiations. The Petitioner does not differentiate between the three specific failings of direct-appellate counsel. In *Stevens v. McBride*, No. 05-1442, 2007 WL 1732539, *8 (7th Cir. June 18, 2007), the Seventh Circuit held that "the failure to alert the state court to a complaint about one aspect of counsel's assistance will lead to a procedural default," even if another of counsel's supposed failings has been preserved for *habeas* review. Here, the only ground of Petitioner's third claim that was even arguably fairly presented to the state courts was his contention that direct-appellate counsel was ineffective for failing to raise the punitive-sentencing claim on direct appeal. Thus, the remaining two grounds raised in Claim 3 are procedurally defaulted.

[8] On May 29, 2002, Petitioner filed a post-conviction petition alleging that, among other things, direct-appellate counsel was ineffective for failing to raise the punitive-sentencing claim. The state post-conviction trial court dismissed that petition as untimely. The state appellate court reversed the post-conviction trial court's judgment dismissing the petition on timeliness grounds. *People v. Paleologos*, 803 N.E.2d 108, 112-14 (Ill.App. 2003). The state appellate court noted that the Petitioner's allegations involved "claims of ineffective assistance of trial and appellate counsel." *People v. Paleologos*, 803 N.E.2d at 111. The case returned to the post-conviction trial judge, who then dismissed Petitioner's punitive-sentencing claim (and did not rule on the ineffective-assistance-of-appellate-counsel claim because it was premised on the merits of the punitive-sentencing claim). After the evidentiary hearing and the post-conviction trial court's denial of Petitioner's ineffective-assistance-of-trial-counsel claim, Petitioner then appealed to the state appellate court, raising four grounds for appeal. The "Issues Presented for Review" were as follows:
> Whether Judge Palmer erred in denying defendant's Motion for Recusal?
> Whether Judge McSweeney-Moore erred in denying defendant's Motion for Substitution of Judge for Cause?

prejudice, i.e., "there must be a reasonable probability that the issue not raised would have altered the outcome of the appeal had it been raised." *Lee*, 328 F.3d at 901. Here, because the Petitioner cannot show that he would have been prejudiced because the increased sentence was neither contrary to, nor an unreasonable application of, controlling Supreme Court precedent; Petitioner is not entitled to *habeas* relief. § 2254(d)(1). Indeed, the Supreme Court in *Alabama v. Smith*, 490 U.S. 794, 801 (1989), held that the mere fact that a greater sentence is imposed after trial does not give rise to a presumption that the subsequent sentence was imposed vindictively, noting "when a greater penalty is imposed after a prior guilty plea, the increase in sentence is not more likely than not attributable to the vindictiveness on the part of the sentencing judge." The state appellate court reasonably applied *Smith* in holding that Petitioner

---

> Whether the court's finding that Petitioner had not been denied effective assistance of counsel during plea negotiations was against the manifest weight of the evidence[?]
> Whether Judge Palmer erred in dismissing that portion of the petition which alleged that [P]etitioner had been punished with a greater sentence because he exercised his right to trial?

(Ex. P at 5). Petitioner did not list as an "Issue Presented for Review" whether he had been denied effective assistance of direct appellate counsel. The state appellate court issued its ruling on December 2, 2005, affirming the ruling of the state post-conviction trial court. The state appellate court did not address the Petitioner's claim of ineffective assistance of direct appellate counsel. Petitioner then filed the PLA in the Illinois Supreme Court. The PLA sought review of the state appellate court's December 2, 2005 decision (which, as noted earlier, did not address the Petitioner's ineffective-assistance-of-direct-appellate-counsel claim). The PLA did state that "his attorney on appeal was hopelessly incompetent" (Ex. T at 5) but never stated that this was one of the bases for appeal. This statement fails to rise to the level of providing the state court a "full and fair opportunity to review the issue." *O'Sullivan*, 526 U.S. at 845. The PLA was denied by the Supreme Court in a one-line order. Thus, Petitioner's claim that direct-appellate counsel was ineffective for not raising the vindictive sentencing issue is procedurally defaulted.

failed to demonstrate that his 50-year sentence was motivated by actual vindictiveness. The reasons for this sentence announced by the trial-court judge and set out above also support this conclusion. Therefore, Petitioner cannot meet his burden under Section 2254 on the punitive-sentencing claim.

## CONCLUSION

For the foregoing reasons, the Petition for Writ of *Habeas Corpus* is denied.

Dated: August 27, 2007

JOHN W. DARRAH
United States District Court Judge